CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED for Roanoke
SEP 13 2007
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JERMAINE M. CALLUM,<br>Petitioner, | )<br>) Civil Action No. 7:06cv00472<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| UNITED STATES OF AMERICA,<br>Respondent. | ) By: Hon. Norman K. Moon<br>) United States District Judge |

Jermaine M. Callum, a federal inmate proceeding pro se, filed this action as a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The action is presently before the court on Respondent's Motion to Dismiss and the Report and Recommendation of Magistrate Judge B. Waugh Crigler. For the following reasons, the court will adopt the Report and Recommendation and grant Respondent's Motion to Dismiss.

I.

On July 14, 2004, Callum was indicted on two counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1). In January 2005, the Government extended a plea agreement to Callum, and he accepted. However, at a hearing on February 22, 2005, the court did not accept his guilty plea after the court determined that Callum did not fully understand it. Thereafter, on April 6, 2005, a superceding six-count indictment ("Superceding Indictment") was handed down, charging Callum with two counts of distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1) ("Count One" and "Count Two"); tampering with a witness or informant, in violation of 18 U.S.C. § 1512(b)(1) ("Count Three"); threatening communication, in violation of 18 U.S.C. §§ 1503 and 2 ("Count Four"); alteration or destruction of a record in an official proceeding, in violation of 18 U.S.C. § 1512(c) ("Count Five"); and criminal contempt of a court order, in violation of 18 U.S.C. § 402 ("Count Six"). On May 12, 2005, pursuant to a second written plea agreement, Callum

pleaded guilty to Counts One, Two, Three, and Six of the Superceding Indictment. In the agreement, he waived his right to appeal his sentence on any ground (Plea Ag. at 4), to collaterally attack the judgment and sentence imposed by the court (Plea Ag. at 4), and to bring any claim he might have regarding ineffective assistance of counsel, known and not raised at the time of sentencing (Plea Ag. at 6-7.) In exchange for his guilty plea, the government agreed to move to dismiss the remaining two counts against Callum and to recommend a two-level sentencing reduction for his acceptance of responsibility. (Plea Ag. at 3.)

Callum initialed every page of the plea agreement, including the page containing the waiver of collateral-attack rights. By signing the plea agreement, Callum affirmed that he had read the plea agreement, that he had carefully reviewed every part of the agreement with his attorney, that he understood the agreement, and that he was voluntarily agreeing to its terms. (Plea Ag. at 8.)

During his plea hearing, Callum stated under oath that he finished 10th grade, that he was in good health, and that he was not under the influence of any medication or alcoholic beverage. (Plea Hearing Tr. at 2-3.) The court established that Callum was aware of the nature of the charges against him, that he understood the range of punishment that he faced, that he understood how the United States Sentencing Guidelines might apply in his case, and that he knew that he had the right to a jury trial. (Tr. at 3-10.) The court also established that Callum was aware that he would be bound by his plea agreement, even if his sentence was more severe that he expected. (Tr. at 10.)

The court instructed Callum's attorney and the prosecutor to review the salient portions of the plea agreement that Callum had reached with the Government. (Tr. at 10.) In response, the prosecutor specifically advised Callum that he was waiving "his right to appeal the Court's sentence," and that he was waiving "his right to collaterally attack under title 28 United States Code 2255. . . ." (Tr. at 10.) After hearing the plea agreement described by his attorney and the

2

prosecutor, Callum affirmed that it was consistent with his own understanding of the agreement. (Tr. at 11.)

The court also specifically inquired as to whether Callum was voluntarily pleading guilty. (Tr. at 11.) Callum affirmed that he had read and understood the plea agreement before he signed it, and that no one had made any promises or induced him to plead guilty. (Tr. at 11.) Callum also affirmed that he was satisfied with the services and advice that his attorney had provided. (Tr. at 4.)

After all of the court's questions, Callum stated that he still wanted to plead guilty. (Tr. at 16.) The court accepted Callum's plea and found that he was "fully competent and capable of entering an informed plea," and that his plea of guilty was "knowing and voluntary." (Tr. at 17.)

At his sentencing hearing, before the court pronounced the sentence, Callum was given the opportunity to address the court. (Sent. Hearing Tr. at 20.) At that time, Callum did not express any desire to withdraw from the plea agreement, or voice any complaints regarding the quality and effectiveness of his attorney's representation. Instead, Callum apologized to his mother. (Tr. at 20.) The court ultimately sentenced Callum to 120 months as to each of Counts One, Two, and Three and six months as to Count Six, all to run concurrently. (Tr. at 21.) He did not appeal his conviction or sentence.

Callum filed the instant § 2255 motion, claiming that counsel was ineffective in failing to discuss the initial plea agreement with him and file a notice of appeal upon Callum's request. Callum also claims prosecutorial misconduct in that the prosecutor "vindictive[ly]" prosecuted him.

Respondent filed a Motion to Dismiss on October 10, 2006. After Callum responded, the court took Respondent's motion to dismiss under advisement and ordered an evidentiary hearing to determine whether Callum requested his attorney to file an appeal. The court referred the matter to United States Magistrate Judge B. Waugh Crigler pursuant to 28 U.S.C. § 636(b) for a recommended

disposition of this claim. An evidentiary hearing was held on May 22, 2007, and the Magistrate Judge filed a Report and Recommendation, finding that Callum received reasonable and effective counseling regarding his right to appeal and that Callum failed to prove by a preponderance of the evidence that he requested counsel to file an appeal. The Magistrate Judge recommended that Respondent's Motion to Dismiss be granted as to his claim that counsel was ineffective in failing to file an appeal upon request. Both Callum's current counsel and Callum himself filed objections within the ten days allotted under 28 U.S.C. § 636(b), reiterating the arguments made in his brief supporting his petition and at the evidentiary hearing, as well as objecting to several alleged errors in the Report.[1]

## II.

The Magistrate Judge's Report and Recommendation only addresses Callum's claim that counsel was ineffective in failing to file a notice of appeal upon Callum's request. Callum objects to the following findings and alleged errors in the Magistrate Judge's Report and Recommendation:

1. Callum received effective counseling regarding his right to appeal;

2. Reference that Callum denied the first plea agreement (Report at 1);

3. Reference to a third plea agreement (Report at 3);

4. Assertion that Callum had no explanation as to why the August 4, 2005 letter

---

[1] In his objections to the Report and Recommendation, Callum also seeks to add two new claims to his petition: (1) that his plea was not knowing and voluntary and (2) that counsel was ineffective in failing to advise him of the "true terms" of the second plea agreement. An amendment to a pending Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. §2255, is subject to the one-year statute of limitations set forth in § 2255 para. 6 and is properly denied as untimely unless the amendment relates back to a timely raised claim, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. Mayle v. Felix, 545 U.S. 644, 664 (2005). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Id. In this case, Callum's new claims do not relate back to the claims raised in his initial § 2255 motion. Since Callum's conviction became final on August 22, 2005, and he did not file the two new claims until July 10, 2007, the court finds that his new claims are untimely. Moreover, for the reasons stated in section III of this Opinion, the court finds that his new claims nevertheless have no merit.

4

indicated that a copy was sent to himself (Report at 5);

5. Reference that Callum had been imprisoned in Texas (Report at 8);

6. Credibility given to attorney Johnson's testimony;

7. Distinction made between jail and prison (Report at 5);

8. Assertion that the court advised Callum of the potential risks of appealing (Report at 12); and

9. Magistrate Judge's consideration of the August 9, 2005 letter from trial counsel to Callum.

In accordance with 28 U.S.C. § 636(b)(1), the court shall do a <u>de novo</u> review of the Magistrate Judge's findings to which Callum specifically objected.

Regarding Callum's objections to the Magistrate Judge's references (1) that Callum denied the first plea agreement, (2) to a third plea agreement, and (3) that Callum had been imprisoned in Texas, the court finds no evidence in the record to support the Magistrate Judge's conclusions. Rather, the record reflects that Callum signed the first plea agreement, but the court did not accept his plea as knowing and voluntary; that only two plea agreements existed; and that Callum was never incarcerated in Texas. The court finds that none of these errors, regardless of merit, had an effect on the disposition of the case.

At the evidentiary hearing, Callum testified that he sent a letter to counsel on August 4, 2005, wherein he requested that counsel come visit him "at the prison." (Evid. Hearing Tr. at 24.) In addition, at the bottom of the letter were the initials "JC/TS," which Callum identified to be the initials of Teka Saylor, the mother of his child, and himself, Jermaine Callum. (Tr. at 25.) Callum claimed that Ms. Saylor typed the letter for him and brought it to him at Charlottesville-Albemarle Regional Jail, where he mailed it to his attorney. (Tr. at 26-27.) In the Report and Recommendation,

5

the Magistrate Judge found that Callum did not cause the August 4, 2005 letter to be sent to his trial counsel, Pamela R. Johnson ("Johnson"), in the manner or at the time he claims he did. (Report at 11.) In support of this finding, the Magistrate Judge pointed out the fact that although the letter requested Johnson to visit Callum at "prison," in fact, at the time the letter was purportedly sent, Callum was actually in jail at the Charlottesville-Albemarle Regional Jail. (Report at 11.) It was not until later that Callum was transferred to a prison, at FCI Allenwood, Pennsylvania. Callum objects to the Magistrate Judge's assertion that Callum had no explanation as to why the August 4, 2005 letter indicated that a copy was sent to himself, by way of the initials at the bottom of the letter, and the Magistrate Judge's distinction made between jail and prison. The court finds that these factors, whether valid or not, were just two of several factors that the Magistrate Judge weighed in determining credibility, and that, even if they were not considered, the court's evaluation of the credibility would still be the same. Moreover, at the evidentiary hearing, Callum specifically stated, "I have no idea why she (Teka Saylor) put that on, as far as "JC/TS." (Tr. at 26.) While Callum now attempts to explain why the letter indicated that a copy was sent to himself, at the time of the evidentiary hearing, the court finds that Callum had not explained why the letter indicated that a copy was sent to himself.

Next, Callum objects to the Magistrate Judge's conclusion that attorney Johnson's testimony was more credible than Callum's. He argues that her testimony was a "skillful design to cloak her deficient performance" and that her "tounge is clearly dripping with motivations to misrepresent." The court finds that the Magistrate Judge was in the best position to judge the credibility of the witnesses at the evidentiary hearing. Moreover, the court need not conduct a de novo review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d

6

44, 47-48 (4th Cir. 1982). Upon review of the record, the court agrees with the Magistrate Judge's credibility determinations for the reasons stated by the Magistrate Judge in his Report and Recommendation.

Callum also objects to the Magistrate Judge's assertion that the court advised Callum of the potential risks of appealing. (Report at 12.) However, at his sentencing hearing, the court specifically advised Callum that he waived his right to appeal and that the waiver was binding unless the sentence exceeded the statutory maximum or was based on a constitutionally impermissible factor. (Sent. Hearing Tr. at 22-23.) The court went on to say, " If you undertake to appeal, despite your waiver, you may lose the benefits of your plea agreement." (Tr. at 23.) Therefore, Callum's objection to the Magistrate Judge's assertion has no merit.

Callum objects to the Magistrate Judge's consideration of the August 9, 2005 letter from trial counsel to Callum, arguing that it is irrelevant to the issue at hand. The court finds that it is relevant to the issue of whether counsel advised Callum of his right to appeal and to the general issue of credibility, Accordingly, the court finds that the Magistrate Judge properly considered this letter in preparing his Report and making his recommendation.

With regard to his objection to the Magistrate Judge's finding that he received effective counseling regarding his right to appeal, the court agrees with the Magistrate Judge's finding. In order to establish a claim of ineffective assistance of counsel, Callum must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's alleged deficient performance, the outcome of his case would have been different. Strickland v. Washington, 466 U.S. 668, 669 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). "An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective." United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000) (citing Roe v. Flores-Ortega, 528 U.S. 470

7

(2000)); see also United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993).

Callum alleges that he asked trial counsel to file an appeal the same day his sentence was imposed (Evid. Hearing Tr. at 16), again in a letter he sent to counsel on August 4, 2005 (Tr. at 16), in a later telephone conversation a couple days after August 4, 2005 (Tr. at 17), and finally in a telephone conversation sometime after August 18, 2005 (Tr. at 21). Callum's time to note an appeal expired on August 22, 2005, ten (10) business days after final judgment was entered on August 8, 2005. Callum's trial counsel, Johnson, testified that Callum never asked her to file an appeal, either before or after that date. (Tr. at 55.) She also testified that he never received the August 4, 2005 letter from Callum. (Tr. at 60-61.) Johnson did, however, acknowledge receiving phone calls from Callum, but indicated that he never mentioned that he wanted to appeal, rather he spoke about a motion for reconsideration. (Tr. at 57.) She further testified that had Callum requested her to file an appeal, she would have counseled her client against an appeal, but nevertheless, out of a duty to her client, she would have noted the appeal, no matter how frivolous. (Tr. at 56.)

Johnson testified at the evidentiary hearing that throughout her representation of Callum, she had many telephone conversations with and messages from Callum. (Evid. Hearing Tr. at 58, 69, 75, 78.) In addition, it is undisputed that on August 9, 2007, Johnson sent a letter to Callum indicating that she received his message regarding a motion for reconsideration. Johnson testified, and the August 9, 2007 letter further demonstrates, that throughout their many conversations, Callum never asked her to file an appeal, rather, their conversations pertained to other aspects of the case. Upon a review of the transcripts of the evidentiary hearing and all pertinent portion of the record, the court finds that the weight of the evidence supports Johnson's testimony that Callum never asked her to note an appeal.

Because the court finds that Callum did not request counsel to file an appeal, the next issue

8

the court must determine is whether trial counsel consulted with Callum regarding the advantages and disadvantages of filing an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. In this case, although Johnson discussed the plea agreement's waiver provisions with Callum, it appears she did not fully discuss the advantages and disadvantages of appealing the sentence. Therefore, the court must further inquire whether counsel had the affirmative duty to consult. Flores-Ortega, 528 U.S. at 480. An affirmative duty to consult arises when either (1) any rational defendant would want to appeal (for example, where there is a non-frivolous ground for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Id. Based on the waiver in his plea agreement, the only claims which Callum could raise on appeal, despite the waiver, were that the sentence was imposed in excess of the maximum penalty allowed or was based on the consideration of a constitutionally impermissible factor such as race. United States v. Lemaster, 403 F.3d 216, 218 n.2 (4th Cir. 2005) (citing United States v. Marin, 961 F.2d 493 (4th Cir. 1992)). As neither of these issues have been raised, the court finds that Callum had no non-frivolous grounds on which to base his appeal.

Moreover, in exchange for his guilty plea and waivers of his rights to appeal and collaterally attack his sentence, Callum received significant benefits for his bargain. Pursuant to the plea agreement, the Government agreed to dismiss two other counts of the Superceding Indictment and Callum received a two-level reduction in his total offense level for his acceptance of responsibility. Without those benefits, on just the counts he pleaded guilty to alone, Callum faced a statutory punishment of up to 50 years and 6 months plus up to a $2,251,000 fine; he would not have received the two-level reduction to his total offense level for his acceptance of responsibility, which would have increased his Sentencing Guidelines range for those counts to 130-162 months; and he also risked convictions on the two other counts in the indictment.

9

In light of Callum's waiver of his right to appeal any sentencing guideline factors, the absence of any non-frivolous ground for appeal, the significant benefit to Callum's plea bargain, and the fact that the court clearly apprised Callum of his right to appeal, the facts of this case fall squarely in the examples cited by the court in Flores-Oretega where no further consultation by counsel is required. Flores-Oretega, 528 U.S. at 479-80. Consequently, the court finds that in this case, a rational defendant would not want to appeal and that Callum did not reasonably demonstrate to counsel that he was interested in filing an appeal in this case. Therefore, counsel did not have an affirmative duty to consult with Callum. Accordingly, Callum has shown neither deficient performance by counsel nor prejudice and thus his claim that counsel was ineffective in failing to file a notice of appeal upon Callum's request. Strickland, 466 U.S. at 669.

### III.

With regard to Callum's remaining claims of ineffective assistance and prosecutorial misconduct, the court finds that Callum's motion must be dismissed because he specifically waived his right to collaterally attack his conviction and sentence and his remaining claims fall within the scope of that waiver.[2] The United States Court of Appeals for the Fourth Circuit has held that a waiver of collateral-attack rights is valid as long as the waiver is knowingly and voluntarily made. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). The determination of whether a waiver is knowing and voluntary depends "upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused." United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). The Fourth Circuit has emphasized that "a defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'"

---

[2] Callum's remaining claims are that counsel was in effective in failing to discuss the initial plea agreement and that the government vindictively prosecuted him.

United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Thus, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (quoting Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). If a district court determines that a petitioner knowingly and voluntarily waived his collateral-attack rights, and that the petitioner's claims fall within the scope of that waiver, the court must dismiss the § 2255 motion without addressing the merits of those claims. See id. at 222, United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005) (discussing appeal waivers).

Having fully considered the parties' arguments, the court finds that Callum knowingly and voluntarily waived his right to collaterally attack his conviction and sentence. The language and meaning of the waiver of collateral-attack rights is clear and unmistakable. By signing the plea agreement, Callum affirmed that he had carefully reviewed the agreement with his attorney and that he understood all of its terms. Moreover, during the plea hearing, his own attorney and the Assistant United States Attorney summarized the terms of the plea agreement, including that he was waiving his appeal and collateral-attack rights. (Plea Hearing Tr. at 10). In response to the court's questions, Callum verified that the description of the plea agreement provided by the prosecutor and his attorney was consistent with his own understanding of the agreement's terms. (Tr. at 11). Therefore, there is no basis on the record for the court to conclude that Callum's decision to accept the waiver was an unknowing or involuntary act.

Next, the court must consider whether the remaining claims fall within the scope of Callum's waiver. The Fourth Circuit has recognized a narrow class of claims that fall outside the scope of a valid waiver of appellate or collateral-attack rights. Issues that a defendant could not reasonably

11

have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on an constitutionally impermissible factor such as race, fall outside the scope of the waiver. See United States v. Blick, 408 F.3d 162, 171 (4th Cir. 2005); United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994); LeMaster, 403 F.3d at 220 n. 2; United States v. Embree, 169 Fed. Appx. 761, 762 (4th Cir. 2006). Callum does not allege that his sentence was above the statutory maximum or that its imposition was based on a constitutionally impermissible factor. Both of Callum's remaining claims pertain to times prior to Callum signing the plea agreement and, thus, could reasonably have been foreseen when he entered his plea.

For the reasons stated, the provisions of the plea agreement and the transcript from the plea hearing conclusively establish that Callum knowingly and voluntarily waived the right to collaterally attack his convictions and sentence. Because none of Callum's remaining claims fall within the narrow class of claims that have been found to fall outside the scope of a valid waiver, his § 2255 motion must be dismissed. Accordingly, the court will grant Respondent's Motion to Dismiss.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to Petitioner.

ENTER: This 13th day of September, 2007.

United States District Judge